UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
AMES RAY,

                Plaintiff,

    -against-

CHRISTINA RAY and JOHN DOE GUARNERIUS
ENTITIES 1–10,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM DECISION
AND ORDER**

18 Civ. 7035 (GBD)

GEORGE B. DANIELS, United States District Judge:

    Plaintiff Ames Ray brings this action against Defendant Christina Ray ("Christina") and Defendants John Doe Guarnerius Entities 1–10 (the "JDG Entities"), hedge funds with whom Christina has contractual relationships, asserting claims for constructive fraudulent conveyance, actual fraudulent conveyance, and attorneys' fees under the New York Debtor and Creditor Law ("DCL").[1] (*See* Compl., ECF No. 1.) Christina moves to dismiss the complaint for lack of personal jurisdiction, insufficient service of process, and failure to state a claim pursuant to Rules 12(b)(2), (4), (5) and (6) of the Federal Rules of Civil Procedure. (ECF No. 16.) Plaintiff cross-moves for leave to re-serve pursuant to Rule 4(m). (ECF No. 27.)

    Christina's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is GRANTED. Plaintiff's cross-motion for leave to re-serve is DENIED as moot.

## I.    FACTUAL BACKGROUND

    In 1998, Plaintiff commenced an action (the "1998 Action") against Christina in the Supreme Court of the State of York, New York County (the "New York Supreme Court") alleging that she had breached various agreements that she had with Plaintiff by failing to pay him amounts

---

[1] The JDG Entities have not been identified or served with process in this action.

owed.  (Compl. ¶ 35.)  On February 8, 2008, the New York Supreme Court entered judgment in Christina's favor.  (*Id.* ¶ 37.)  Plaintiff appealed, and on April 7, 2009, the Appellate Division, First Department reversed the judgment and reinstated the complaint.  (*Id.* ¶¶ 38–39.)  In June and July 2017, a fourteen-day jury trial was held, and the jury returned a special verdict in Christina's favor. (*Id.* ¶ 41.)  After the jury verdict, the New York Supreme Court dismissed the complaint in the 1998 Action.  (*Id.*)  Plaintiff has appealed the dismissal.[2]  (*Id.*)

In April 2008, while Plaintiff's appeal of the summary judgment decision in the 1998 Action was pending, Christina obtained a mortgage on her co-op apartment.  (*Id.* ¶¶ 42, 59.) Plaintiff alleges that the apartment was Christina's "only substantial asset known to [Plaintiff]." (*Id.* ¶¶ 42, 59, 62, 69, 82.)  Plaintiff further alleges that between April 24, 2008 and October 31, 2009, Christina transferred $420,000 of the mortgage proceeds to the JDG Entities.  (*Id.* ¶ 6.) Christina transferred the remaining $80,000 of the mortgage proceeds to her attorneys in the 1998 Action.  (*Id.* ¶ 42.)

On December 20, 2010, when Plaintiff learned that Christina had mortgaged her apartment and distributed the proceeds, he filed a new action (the "2010 Action") against Christina in New York Supreme Court.[3]  In the 2010 Action, Plaintiff brought fraudulent conveyance claims under DCL §§ 273-a and 276 alleging that Christina mortgaged the apartment and transferred the proceeds to her attorneys "and very likely others" to make herself insolvent and avoid paying the

---

[2] Plaintiff's complaint in this action alleges that "[i]f a judgment is entered" in the 1998 Action, Plaintiff "intends to appeal."  (Compl. ¶ 41.)  After the complaint was filed, Plaintiff filed a notice of appeal in the 1998 Action, which is due to be perfected in May 2019.  (Letter from Rita W. Gordon to this Court dated Feb. 21, 2019 ("Feb. 21 Letter"), ECF No. 36, at 1 n.1.)

[3] Prior to filing the 2010 Action, Plaintiff commenced an action against Christina, her attorneys, and "unknown others" by filing a summons with notice but did not pursue it. *Ray v. Ray* ("*Ray I*"), 970 N.Y.S.2d 9, 11 (App. Div. 1st Dep't 2013).

debts that were the subject of the 1998 Action.  (Compl., Ex. 16 ("2010 Compl."), ECF No. 1-6, ¶¶ 2–3; *see also* Compl. ¶ 42.)

The New York Supreme Court granted Christina's motion to dismiss the 2010 Action on the pleadings.  In its decision affirming the dismissal, the Appellate Division, First Department found that "[t]he court below correctly dismissed the claims based upon [DCL] § 273 because there was no judgment against [Christina] when she refinanced the mortgage and she had prevailed on having the 1998 [A]ction dismissed." *Ray I*, 970 N.Y.S.2d at 12.  The First Department noted that "[a]lthough [P]laintiff filed a notice of appeal, there was no stay against [Christina] taking the steps that she took." *Id.*  The First Department further found that "Plaintiff's claims under [DCL] § 276 were . . . properly dismissed," because they were not "pleaded with the particularity required under CPLR § 3016(b)."[4] *Id.*

On April 23, 2014, Plaintiff filed another fraudulent conveyance action (the "2014 Action") in the New York Supreme Court against Christina and her wholly-owned company, Guarnerius Management, LLC ("GMLLC").  (Compl. ¶ 45; *see also* Decl. of Donald E. Watnick dated Oct. 26, 2018, Ex. B ("2014 Compl."), ECF No. 19-2.[5])  The complaint in the 2014 Action, like the complaint in the 2010 Action, alleged that Christina mortgaged her apartment and distributed some

---

[4] Pursuant to CPLR § 3016(b), "[w]here a cause of action . . . is based upon misrepresentation, fraud, mistake, willful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail."  Thus, CPLR § 3016(b), like Rule 9(b), imposes "heightened fraud pleading requirements." *NM IQ LLC v. McVeigh*, No. 03 Civ. 4371 (JFK), 2004 WL 2827618, at *7 (S.D.N.Y. Dec. 9, 2004) (describing CPLR § 3016(b) as "New York's version of Rule 9(b)").

[5] Although the complaint in this action asserts that 2014 complaint is attached as "Ex. 1 hereto," (Compl. ¶ 45), Exhibit 1 is the complaint in the 1998 Action.  (*See* Compl., Ex. 1, ECF No. 1-1.)  Notwithstanding Plaintiff's apparent error, this Court will consider the 2014 complaint in deciding the instant motion.  Even if it were not intended to be an exhibit to Plaintiff's complaint in this action, the 2014 complaint—and other documents filed in the 2010 and 2014 Actions—are subject to judicial notice. *See, e.g., In re Old Carco LLC*, 509 F. App'x 77, 79 (2d Cir. 2013) ("[C]ourts may take judicial notice of court filings to establish that certain matters have been publicly asserted, not for the truth of the matters asserted therein.") (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)).

of the proceeds to the attorneys who represented her in the 1998 Action. (2014 Compl. ¶ 3.) The complaint in the 2014 Action further alleged that Christina "transferred the remainder of the mortgage proceeds to her company, [GMLLC]." (*Id.* ¶ 4.)

Christina filed a motion to dismiss the 2014 Action on the pleadings and impose sanctions against Plaintiff for filing a frivolous complaint. (Compl. ¶ 46.) The New York Supreme Court granted the motion in full. (*Id.*) On February 22, 2018, the First Department issued a decision (the "2018 Decision") affirming the dismissal of the 2014 Action but reversing the imposition of sanctions. *See Ray v. Ray* ("*Ray II*"), 68 N.Y.S.3d 724, 725 (App. Div. 1st Dep't 2018).

In its 2018 Decision, the First Department found that "the [2014] complaint is not barred by the doctrines of *res judicata* or collateral estoppel," because "the 2010 complaint was dismissed not on the merits but due to pleading defects." *Id.* (citing *Hodge v. Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO*, 703 N.Y.S.2d 184 (App. Div. 1st Dep't 2000)). Nonetheless, the First Department found that the 2014 complaint fails to state a cause of action under § 273 because it "lacks the factual allegations and evidence required to support the contention that Christina Ray fraudulently transferred funds to Guarnerious [sic]" or her attorneys. *Id.* (citing *Jaliman v. D.H. Blair & Co., Inc.*, 964 N.Y.S.2d 112, 114 (App. Div. 1st Dep't 2013)). The First Department also found that the 2014 complaint "does not plead intent to defraud sufficiently to support a claim under DCL § 276." *Id.* The First Department further explained that "[t]he fraudulent conveyance claims are not pleaded in sufficient detail to satisfy the heightened particularity requirement of CPLR § 3016(b)" and that "[P]laintiff did not properly rely on the 'badges of fraud' to show actual intent to defraud or hinder present or future creditors." *Id.* (citing *RTN Networks, LLC v. Teleco Grp., Inc.*, 5 N.Y.S.3d 80, 81 (App. Div. 1st Dep't 2015)).

On August 6, 2018, Plaintiff brought this action, which purports "to correct the deficiencies that the First Department upheld in . . . its 2018 . . . Decision." (Compl. ¶ 5.) Christina moves to dismiss on the grounds that the complaint is time-barred and, like the complaints in the 2010 and 2014 Actions, fails to state a claim.[6] (Mem. at 18.)

## II.   THE TIMELINESS OF PLAINTIFF'S CLAIMS

Plaintiff alleges that the transfers at issue occurred "between April 24, 2008 and October 31, 2009." (Compl. ¶ 6.) Although fraudulent conveyance claims are subject to a six-year statute of limitations, *see* N.Y. C.P.L.R. § 213(8) (McKinney), Plaintiff alleges that his claims are timely because "the [c]omplaint is brought pursuant to [New York Civil Practice Law and Rules ('CPLR')] § 205(a) following the First Department's affirmance . . . of the dismissal on the pleadings" in the 2018 Decision.[7] (Compl. ¶ 1.) Christina argues that CPLR § 205(a) does not apply because: (1) Christina was not properly served within six months of the termination of the 2014 Action and (2) this action is not based on the "same transaction or occurrence" as the 2014 Action. (Mem. at 13–15.) Neither argument provides a basis to dismiss Plaintiff's claims.

---

[6] Christina also argues that defects in the summons and service of process provide grounds for dismissal pursuant to Rules 12(b)(2), 12(b)(4), and 12(b)(5). (Mem. in Supp. of Def.'s Mot. to Dismiss ("Mem."), ECF No. 17, at 9–10.) "However, any defective service could be cured." *Jean-Laurent v. Cornelius*, No. 15 Civ. 2217 (JGK), 2017 WL 933100, at *1 (S.D.N.Y. Mar. 8, 2017), *appeal dismissed*, No. 17 Civ. 1313, 2017 WL 5054220 (2d Cir. Sept. 13, 2017).

[7] CPLR § 205(a) provides, in relevant part:

> If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period.

## A. Improper Service

CPLR § 205(a) requires "service upon [a] defendant [to be] effected within [the] six-month period" after the prior action is terminated. An Affidavit of Service filed in this action reflects that copies of the summons and complaint were delivered and mailed to Christina at Omnis, Inc ("Omnis"). (ECF No. 26.) According to the complaint, Christina has worked at Omnis since 2008 as a Senior Managing Director for Marketing Intelligence. (Compl. ¶ 18.) Christina does not deny that she received copies of the summons and complaint that were delivered and mailed to her at Omnis.[8] (*See* Decl. of Christina Ray dated Oct. 25, 2018 ("Ray Decl."), ECF No. 18, ¶¶ 2–3.) However, Christina argues that she was not properly served because the summons did not comply with Rule 4 of the Federal Rules of Civil Procedure. Specifically, Christina asserts—and Plaintiff does not dispute—that the summons was not signed and sealed by the Clerk of Court. (*See* Mem. at 9 (citing Fed. R. Civ. P 4(a) ("A summons must," among other things, "be signed by the clerk[] and . . . bear the court's seal."); *see also* Mem. in Supp. of Pl.'s Opp'n to Def's Mot. to Dismiss ("Opp'n"), ECF No. 28, at 24 (acknowledging that "the Summons was not signed").

Plaintiff argues that he should be granted leave to re-serve the summons pursuant to Rule 4(m), (*see* Opp'n at 22–25), which gives district courts "discretion to grant extensions [of time to

---

[8] Christina contends that "the summons and complaint that were purportedly served on [her] differ from the summons and [c]omplaint . . . filed with th[is] Court," because the copies served contained the wrong civil action number and two of the exhibits do not contain a file stamp from the electronic case filing ("ECF") system. (Mem. at 7 (citing Decl. of Donald E. Watnick dated Oct. 26, 2018 ("Watnick Decl."), ECF No. 19, ¶¶ 3–4).) However, the differences she identifies are not material. The civil action number on the summonses attached to Christina's declaration is incorrect, but the caption is otherwise accurate. (See Ray Decl., Exs. A & B, ECF Nos. 18-1 & 18-2.) The first of the two exhibits to the complaint attached to Christina's declaration is the 2014 complaint. (See Ray Decl., Ex. C, ECF No. 18-3, at 32–53.) As noted above, although Exhibit 1 on the ECF system is the complaint in the 1998 Action, (see Compl., Ex. 1), this appears to be an error, as the text of the complaint in this action—both on ECF and attached to Christina's declaration—identifies the 2014 complaint as "Ex. 1." (Compl. ¶ 45; Ray Decl., Ex. C ¶ 45.) The second of the two exhibits to the complaint consists of excerpts from Christina's deposition. Apart from the ECF file stamp, the versions of that exhibit attached to the served and electronically filed versions of the complaint appear to be identical. (*Compare* Compl., Ex. 2, ECF No. 1-2, *with* Ray Decl., Ex. C, at 54–65.)

serve] even in the absence of good cause." *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007); *see also DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 67 (S.D.N.Y. 2010) (finding that "even if [the plaintiff's] failed efforts at serving process amount to a flagrant disregard of the Rule, the [c]ourt [may] use[] its discretion under Rule 4(m) to grant . . . leave to re-serve"). It is unclear whether a discretionary grant of leave to serve beyond the six-month tolling period would permit the application of § 205(a) to plaintiff's claims. However, in light of § 205(a)'s "design[] to insure the diligent suitor the right to a hearing in court till he reaches a judgment on the merits . . . where the defending party has had timely notice of the action," *Malay v. City of Syracuse*, 33 N.E.3d 1270, 1272 (N.Y. 2015), this Court will assume, without deciding, that a grant of leave to re-serve would enable Plaintiff to effect timely service on Christina for purposes of CPLR § 205(a).

## B. Same Transaction or Occurrence

Christina argues that CPLR § 205(a) is also inapplicable because this action involves "new transferees and newly alleged transfers" and is therefore not part of the "same transaction or occurrence or series of transactions or occurrences" as the 2014 Action. (Mem. at 15.) While some of the transactions alleged in the two actions differ, this action and the 2014 Action are premised on at least one common transaction—Christina's receipt of the proceeds from the mortgage placed on her apartment. (*See* Compl. ¶ 69 (alleging that Christina "mortgaged her co-op apartment to the hilt" and received "proceeds"); 2014 Compl. ¶ 3 ("When Chris[tina] fully mortgaged her apartment in Manhattan, she received approximately $500,000.").  The two actions also involve "the same general allegations and operative facts." *Kavanau v. Virtis Co.*, 300 N.Y.S.2d 977, 978 (App. Div. 1st Dep't 1969); *cf. Van Dussen-Storto Motor Inn, Inc. v. Rochester Tel. Corp.*, 407 N.Y.S.2d 287, 292 (4th Dep't 1978) (finding CPLR § 205 inapplicable where the

new action was not "based on the same 'transaction or occurrence' or the same 'operative facts' as the first lawsuit") (citations omitted). In both actions, Plaintiff alleges that Christina transferred the proceeds she obtained from the mortgage transaction to other entities in order to avoid paying money owed to Plaintiff. (*See* Compl. ¶ 69 ("As soon as the mortgage closed . . . , [Christina] proceeded to fraudulently transfer the bulk of her assets to the JDG Entities, in a knowing, conscious, intentional, deliberate attempt to make those monies unavailable for paying her debt to [Plaintiff]."); 2014 Compl. ¶ 46 ("Chris[tina] mortgaged her apartment and transferred the proceeds of that mortgage to [her attorneys] and to Guarnerius in order to defeat her primary creditor, Ames [Ray].").) Indeed, Christina acknowledges that the complaint in this action "largely repeats the same material facts" as the complaint in the 2014 Action. (Mem. at 17.) While Christina asserts that there is "no connection between the defendants/transferees in these two actions," (*id.* at 15), Christina is a defendant in both actions. Additionally, Christina testified that GMLLC—the transferee in the 2014 Action—was the "advisory arm" to at least one of the JDG Entities that are the transferees in this action. (Compl., Ex. 2 ("Ray Dep. Tr. "), ECF No. 1-2, at 46:11–21.) Because at least one of the "same transaction[s]" alleged in the 2014 Action is also alleged in this action, CPLR § 205(a)'s "same transaction or occurrence" requirement is satisfied.[9] Because his claims arise from the "same transaction" as the 2014 Action, Plaintiff's claims are not time-barred. But whether Plaintiff's claims are timely is separate from the determination of whether such claims are adequately pled.

---

[9] Although Christina suggests that the factual similarities between the complaint in this action and the 2010 complaint are sufficient to render this action barred by *res judicata*, that doctrine does not apply here. (Mem. at 17–18.) *Res judicata* bars a later action only if, among other things, the earlier action involved a "final judgment on the merits." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 196 (2d Cir. 2010). In its 2018 Decision, the First Department found that because "the 2010 complaint was dismissed not on the merits but due to pleading defects, . . . the [2014] complaint is not barred by the doctrines of res judicata or collateral estoppel." *Ray II*, 68 N.Y.S.3d at 725. The 2014 complaint was also dismissed on the pleadings, *see id.*, so this action is likewise not barred by *res judicata*.

### III.   LEGAL STANDARDS FOR A MOTION TO DISMISS

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this standard, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Finan. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 401 (2d Cir. 2015) (quoting *Twombly*, 550 U.S. at 555 (alteration in original)).

Additionally, "when [a] claim sounds in fraud," it is subject to the "heightened pleading standard of Rule 9(b)." *Rombach v. Chang*, 355 F.3d 164, 167 (2d Cir. 2004). Rule 9(b) provides that "a party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "[T]hough mental states may be pleaded 'generally,' [p]laintiffs must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2008)). While "facts peculiarly within the opposing party's knowledge" may be alleged "upon information and belief," the "allegations must be accompanied by a statement of the facts upon which the belief is based." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

On a motion to dismiss pursuant to Rule 12(b)(6), a court "accept[s] as true the factual allegations made in the complaint and draw[s] all inferences in favor of the plaintiffs." *BPP Ill.*,

*Inc. v. Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 191 (2d Cir. 2017).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

## IV.    THE MERITS OF PLAINTIFF'S CLAIMS

Plaintiff brings claims for constructive fraudulent conveyance under DCL §§ 273 and 275, fraudulent conveyance under DCL § 276, and attorneys' fees under DCL § 276-a.[10]  (*See* Compl. ¶¶ 70–89.)  Christina asserts that she is not liable on any of Plaintiff's claims because "money damages for a fraudulent conveyance under [DCL] §§ 270–76 may not be imposed on the transferor of funds."  (Mem. at 16 (citation omitted).)  But *Amusement Industry, Inc. v. Midland Avenue Associates, LLC*, upon which Christina relies, recognizes that a fraudulent conveyance claim may be brought against "the transferee of the assets or the beneficiary of the conveyance."  820 F. Supp. 2d 510, 533 (S.D.N.Y. 2011) (citation and internal quotation marks omitted).  Read in the light most favorable to Plaintiff, the facts alleged in the complaint could support an inference that Christina was a "beneficiary" of the conveyances to the JDG Entities, because she had agreements giving her a "share of profits" from those entities.  (Compl. ¶ 15.)  However, even if Christina is a proper defendant, all of Plaintiff's claims fail on the merits.

---

[10] "It is well settled that in order to set aside a fraudulent conveyance, one must be a creditor of the transferor; those who are not injured by the transfer lack standing to challenge it." *Eberhard v. Marcu*, 530 F.3d 122, 129 (2d Cir. 2008).  At oral argument, Plaintiff conceded that if the judgment dismissing the 1998 Action is affirmed on appeal, he will not be a creditor of Christina's and will therefore lack standing to pursue his claims in this action. (*See* Oral Arg. Tr. at 53:11–54:23.)  However, because a "creditor whose claim is dependent upon the outcome of litigation becomes a creditor for purposes of the [DCL] when the cause of action accrues," for purposes of this motion, Plaintiff has standing. *Finkelman v. Greenbaum*, 836 N.Y.S.2d 484, 2007 WL 102464, at *5 (citing *Shelly v. Doe*, 671 N.Y.S.2d 803, 805 (App. Div. 3d Dep't 1998)).

## A. Constructive Fraudulent Conveyance

Plaintiff argues that his claims for constructive fraudulent conveyance pursuant to DCL §§ 273 and 275 need not satisfy the heightened pleading requirements of Rule 9(b) and are sufficiently pled to satisfy the "flexible plausibility" standard applicable to claims under Rule 8(a). (Opp'n at 6.) Christina does not contest Plaintiff's assertion that Rule 8(a) applies to those claims, (*see* Mem. in Further Supp. of Def.'s Mot. to Dismiss, ECF No. 32, at 10 (noting that Christina "only seeks dismissal based on Rule 9(b) of the [DCL] § 276 claim")), and "[c]ourts in this Circuit have consistently applied Rule 8(a), not Rule 9(b), to claims for constructive fraudulent conveyance under . . . the DCL." *In re Bernard L. Madoff Inv. Sec. LLC,* No. 11 Misc. 337 (TPG), 2012 WL 5511952, at *3 (S.D.N.Y. Nov. 14, 2012). But even under Rule 8(a)'s standard, Plaintiff has failed to plead the elements of a claim under DCL § 273 or § 275.

### 1. Lack of Fair Consideration

"[L]ack of fair consideration" is "[a]n essential element of a claim pursuant to DCL §§ 273 . . . [and] 275." *Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 248 (2d Cir. 1987). The Second Circuit has explained that the element of "fair consideration" is "analyzed as follows: (1) . . . the recipient of the debtor's property[ ] must either (a) convey property in exchange or (b) discharge an antecedent debt in exchange; and (2) such exchange must be a 'fair equivalent' of the property received; and (3) such exchange must be 'in good faith.'" *In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005) (quoting *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1058–59 (2d Cir. 1995)) (alteration and omission in original).

Here, Plaintiff does not allege facts sufficient to support an inference that the transfers at issue lacked fair consideration.[11] Plaintiff alleges that the transfers to the JDG Entities "were not

---

[11] Plaintiff's general allegations that "the [t]ransfers in question were made for less than fair consideration and . . . [Christina] was thereby rendered insolvent" and that Christina "intended or believed that she would

made in payment of an antecedent debt." (Compl. ¶ 74; *see also id.* ¶ 81 (same).) But a transfer that does not satisfy an antecedent debt may still be supported by fair consideration if the recipient "convey[s] property in exchange" that is a "fair equivalent" for the assets transferred. *In re Sharp Int'l Corp.*, 403 F.3d at 53. Plaintiff makes no allegations as to whether Christina received property of equivalent value in exchange for the transfers. Plaintiff does allege that Christina "worked for [the JDG] [E]ntities and did not own them and thus there is a compelling inference that she would not have transferred her money to them other than to hide it from [Plaintiff]." (*Id.* ¶ 54; *see also id.* ¶¶ 8(1), 74, 81 (same).) But the mere fact that Christina worked for and did not own the JDG Entities provides no basis to infer that the JDG Entities did not provide her with property of equivalent value for the transfers.

## 2. Insolvency Under DCL § 273

In addition to a lack of fair consideration, to state a claim under DCL § 273, a plaintiff must allege that "the transferor is insolvent or will be rendered insolvent by the transfer in question." *United States v. Watts*, 786 F.3d 152, 165 (2d Cir. 2015) (citation and internal quotation marks omitted). For purposes of the DCL, "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." N.Y. Debt. & Cred. Law § 271(1). "The operative reference point for determining insolvency is the time at which the transfer took place[.]" *Kim v. Ji Song Yoo*, 311 F. Supp. 3d 598, 612 (S.D.N.Y. 2018) (citation and internal quotation marks omitted).

---

incur debts beyond her ability to pay them as they matured," (Compl. ¶¶ 62, 73), are "mere recitation[s] of the statutory language" that are insufficient to satisfy Rule 8. *Safety-Kleen Sys., Inc. v. Silogram Lubricants Corp.*, No. 12 Civ. 4849 (ENV) (CLP), 2013 WL 6795963, at *7 (E.D.N.Y. Dec. 23, 2013); *see also Waite v. Schoenbach*, No. 10 Civ. 3439 (RMB), 2010 WL 4456955, at *6 (S.D.N.Y. Oct. 29, 2010) (finding identical allegations insufficient to state a DCL § 273 claim).

Here, Plaintiff has failed to allege facts sufficient to support an inference that Christina was insolvent at the time of the transfers. Plaintiff alleges that Christina was "rendered insolvent when . . . she sent the proceeds . . . to the JDG Entities from her only substantial asset known to [Plaintiff], her coop [sic] apartment." (Compl. ¶ 59.) But this allegation does not preclude the possibility that Christina had *other* assets. Indeed, the allegation in the complaint that Christina "admitted in a March 17, 2010 telephone call to intentionally hiding her assets from [Plaintiff]" supports an inference that Christina had other assets. (*Id.* ¶ 56.)

As further evidence of Christina's insolvency, Plaintiff cites statements in a "February 2011 Affidavit . . . that at the time of the transfer, she had 'no work assignment and no income,'" and in [a] March 2011 Affidavit . . . that at the time of the transfer, [Christina] was 'depleted of assets and unable to find work.'"[12] (Opp'n at 7 n.11 (quoting Compl., Ex. 17, ECF No. 1-17, ¶ 13; *id.*, Ex. 19, ECF No. 1-19, ¶ 32).[13]) However, a statement that Christina had "no work assignment and no income" does not provide a basis to infer that she had no other assets. (Compl., Ex. 17 ¶ 13.) Similarly, a general statement that Christina was "depleted of assets" does not, without more, provide a sufficient factual basis to infer that the value of her assets exceeded her probable liabilities. The cited paragraph in the March 2011 affidavit states that her "depleted [assets]

---

[12] In opposition to the motion to dismiss, Plaintiff also alleges that Christina "admitted that she had no other money at the time of the transfer and no income, had mortgaged her coop [sic] to the maximum, could not pay the maintenance and was tapped." (Opp'n at 7 n.11 (citing Compl. ¶ 56).) However, those allegations do not appear in the complaint, and "it is 'axiomatic that the [c]omplaint cannot be amended by briefs in opposition to a motion to dismiss.'" *Troy v. City of New York*, No. 13 Civ. 5082 (AJN), 2014 WL 4804479, at *1 (S.D.N.Y. Sept. 25, 2014) (citation and internal quotation marks omitted), *aff'd*, 614 F. App'x 32 (2d Cir. 2015). Even if this Court were to consider the new allegations, they would not save Plaintiff's claims. Admissions that Christina had no other money and could not further mortgage her co-op do not foreclose the possibility that she had other assets, and a general statement that Christina was "tapped" does not provide a factual basis to infer that Christina was insolvent.

[13] While Plaintiff's memorandum of law refers to Exhibit 18 to the complaint, this appears to be a typographical error. Exhibit 18 is an email from Plaintiff to her prior counsel. (*See* Compl., Ex. 18, ECF No. 1-18.)

include of [sic] $15,000." (Compl., Ex. 19, ¶ 32.)  While it appears to contain typographical errors, this language suggests that Christina had at least $15,000 in assets.[14]

Moreover, the cited paragraphs of the February and March 2011 Affidavits contain no information regarding Christina's "probable liability" to creditors, and Plaintiff has not otherwise alleged facts to establish the value of those liabilities.[15]  N.Y. Debt. & Cred § 271(1).

Notwithstanding Plaintiff's allegations to the contrary, the debts alleged in the 1998 Action are not probable liabilities.  (Opp'n at 9.)  "[T]he mere existence of a contingent debt, without more, is insufficient to support a finding that such a debt represent[s] a 'probable liability'" where there is "no evidence as to the probability, at the time of the challenged conveyance, that [the] contingent liability would be imposed." *Staten Island Sav. Bank v. Reddington*, 687 N.Y.S.2d 707, 709 (App. Div. 2d Dep't 1999); *see also Lippe v. Bairnco*, 249 F. Supp. 2d 357, 380 (S.D.N.Y. 2003) (quoting same and finding "tort claims for personal injuries" not "probable liabilities"); *cf. Morris Commercial Real Estate Servs. Co. v. Numismatic Collectors Guild, Inc.*, No. 90 Civ. 264 (SWK), 1993 WL 183771, at *8 (S.D.N.Y. May 27, 1993) (finding rental payments were a "probable liability" where a "judgment, the validity of which is undisputed by the defendants, determined that [defendant] was contractually liable to [plaintiff] for rent as it became due").  Because Plaintiff does not allege facts to support an inference that Christina's probable liabilities exceeded her assets, he has not alleged Christina was insolvent.

---

[14] The November 4, 2009 email referenced in the relevant paragraph of the February 2011 Affidavit, (*see* Compl., Ex. 19, ¶ 32), which is attached as an exhibit to the complaint in this action, states that Christina "earned only about $15,000 over the last two years" and that she has "a book contract" of unspecified value. (*Id.*, Ex. 18, at 1.)

[15] The email referred to in the relevant paragraph of the February 2011 Affidavit notes that "if Ames were to prevail," he would "be part of a pool of creditors" but contains no specific information regarding the amounts owed to those creditors. (Compl., Ex. 18 at 1.)

### 3. Subjective Intent or Belief Under DCL § 275

Under DCL § 275, rather than alleging insolvency, a plaintiff must allege that the transferor had a "subjective intent or belief that [she] will incur debt [she] cannot pay at maturity." *Innovative Custom Brands, Inc. v. Minor*, No. 15 Civ. 2955 (AJN), 2016 WL 308805, at *3 (S.D.N.Y. Jan. 25, 2016) (citation and internal quotation marks omitted); *see also In re Operations NY LLC*, 490 B.R. 84, 89 (Bankr. S.D.N.Y. Mar. 21, 2013) (dismissing DCL § 275 claim where "the [c]omplaint does not allege any facts relating to the [d]ebtor's intent to incur debt that it believed it would be unable to pay"). Here, Plaintiff fails to allege facts to support an inference that Christina had such a belief or intent. The transfers that were made in 2008 occurred after the New York Supreme Court had entered a judgment in Christina's favor dismissing Plaintiff's claims. (*See* Compl. ¶¶ 6, 38 (alleging judgment was entered on February 8, 2008 and the transfers began on April 24, 2008).) Although the judgment was on appeal (*see id.* ¶ 38 (alleging a notice of appeal was filed March 20, 2008)), Plaintiff has not alleged any facts that would support an inference that Christina had a "subjective . . . belief" that the appeal would succeed when the transfers were made. *Innovative Custom Brands, Inc.*, 2016 WL 308805, at *3. Plaintiff alleges that Christina "continued to transfer her assets to the JDG Entities until . . . six months after the First Department reinstated [Plaintiff's] claims." (Compl. ¶ 77.) However, at the time of those transfers, Christina still did not know if the reinstated claims would succeed at trial. And in fact, a jury returned a verdict in her favor on the reinstated claims. (*Id.* ¶ 41.) While that verdict is also on appeal, (*see* Oral Arg. Tr. at 63:4–9), as with the 2008 transfers, Plaintiff has not alleged facts to support an inference that Christina had a

subjective belief that she would incur debts beyond her ability to pay at the time the transfers were made. [16]

### 4. Plaintiff's Request for Discovery

In an attempt to avoid dismissal of his DCL §§ 273 and 275 claims, Plaintiff argues that fair consideration, including the issue of whether "a person acted in good faith," and insolvency involve questions of fact that "requir[e] discovery." (Opp'n at 8.) But "[e]ven under the . . . liberal pleading requirements of Rule 8," a complaint must "contain factual allegations that would indicate . . . the factual basis for the belief that these transfers were made without fair consideration." *In re Vivaro Corp.*, 524 B.R. 536, 551 (Bankr. S.D.N.Y. 2015) (quoting *Safety-Kleen Sys., Inc.*, 2013 WL 6795963, at *9). Similarly, to enable a court to "evaluate the sufficiency of a complaint's insolvency allegations" on a motion to dismiss, "the court looks for some sort of 'balance sheet' test or information provided that the [c]ourt can use to infer that [the transferor's] liabilities exceeded their assets at the time the transfers took place.'" *In re Vivaro Corp.*, 524 B.R. at 551 (citation omitted); *see also In re Trinsum Grp., Inc.*, 460 B.R. 379, 393 (Bankr. S.D.N.Y. 2011) (finding complaint containing "net income and net cash flow figures" and alleging that "revenue declined" and "debt levels rose" by specified percentages insufficient). For the reasons explained above, Plaintiff does not make the requisite factual allegations here.

### B. Fraudulent Conveyance Under DCL § 276

Claims brought under DCL § 276 involve "actual intent, as distinguished from intent presumed in law to hinder, delay, or defraud either present or future creditors." N.Y. Debt. &

---

[16] To the extent that Plaintiff argues the pendency of the appeal itself provides a basis to avoid dismissal of his claims, that argument has no merit. The cases upon which Plaintiff relies involve claims brought pursuant to DCL § 273-a, which depends upon showing that in "an action for money damages . . . *after final judgment for the plaintiff*, the defendant fails to satisfy the judgment." (*See* Feb. 21 Letter at 2 (citing *Taubes v. Stewart*, 621 N.Y.S.2d 90, 92 (2d Dep't 1994); *Rampello v. Cioffi*, 723 N.Y.S.2d 75 (2d Dep't 2001).) Plaintiff has not brought a DCL § 273-a claim here.

Cred. Law § 276.  Because such claims sound in fraud, they must satisfy the heightened pleading

requirements of Rule 9(b).  *Atlanta Shipping Corp., Inc.*, 818 F.2d at 251.  As noted above, Rule

9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake."

"Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is

allowed to rely on badges of fraud to support his case, i.e., circumstances so commonly associated

with fraudulent transfers that their presence gives rise to an inference of intent."[17]  *SEC v. Smith*,

646 F. App'x 42, 45 (2d Cir. 2016) (citation omitted).

    Here, Plaintiff argues that he has alleged five "badges of fraud": (1) a "close relationship"

between Christina and the JDG Entities; (2) that Christina "had knowledge of [Plaintiff's] claims";

(3) that the transferred property was the only asset that Christina had available to satisfy a

judgment; (4) that Christina and the JDG Entities used the same attorneys; and (5) that Christina

engaged in a "pattern of conduct" reflecting an intent to defraud after she incurred the relevant

obligation.  (Opp'n at 11.)  None of the badges that Plaintiff identifies support an inference of

fraudulent intent.[18]

---

[17] The Second Circuit's decision in *In re Kaiser*, 722 F.3d 1574 (2d Cir. 1983), "set[s] forth a non-exhaustive list of certain 'badges of fraud,'" which include:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Intuition Consol. Grp., Inc. v. Dick Davis Publ'g Co.*, No. 03 Civ. 5063 (PKC) (S.D.N.Y. Mar. 25, 2004) (quoting *In re Kaiser*, 722 F.2d at 1582–83).

[18] Because Plaintiff has not pled facts to support an inference that the transfers were made with the requisite intent to defraud, Plaintiff cannot avoid Rule 9(b)'s heightened pleading standard by alleging that the "precise details of the transfer[s]" or are peculiarly within [Christina's] knowledge." (Opp'n at 14.)

Plaintiff argues that he alleges a "close relationship" between Christina and the JDG Entities because Christina's "wholly-owned company, GMLLC[,] was 'the advisory arm'" that provided consulting services to the JDG Entities under the name "Guarnerius," and Christina was paid a salary and share of the profits from the JDG Entities for those services. (*Id.* at 12.) But "an arm's-length transaction by sophisticated business people" does not evince the type of "close relationship" giving rise to an inference of fraud. *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp, 913, 935 (S.D.N.Y. 1995). Here, Plaintiff alleges Christina's relationships with the JDG Entities were "contractual" and governed by "a series of written agreements" and that the JDG Entities were "controlled by third parties." (Compl. ¶ 15.) Plaintiff has not pled any facts to support an inference that Christina's business relationships with the JDG Entities were not arm's length. By contrast, in *Rosa v. TCC Communications, Inc.*, upon which Plaintiff relies, two individuals were alleged to have "created the entities that participated in the alleged fraudulent transfers," served as "corporate officers" for each of the entities, and "were required to assent to every action taken" by the entities. No. 15 Civ. 1665 (WHP), 2017 WL 980338, at *4 (S.D.N.Y. Mar. 13, 2017).

Plaintiff argues that fraudulent intent may also be inferred from Christina's "knowledge of [Plaintiff's] claims." (Opp'n at 12–13.) But in *Rosa*, the court inferred intent to defraud because the individual defendant "repeatedly told plaintiff that he would be paid." 2017 WL 980338, at *5. By contrast, here, Plaintiff alleges that "[o]n numerous occasions, [Christina] told [Plaintiff] and/or the New York Supreme Court that she would never pay him the monies she owed him and would do whatever it takes to avoid doing so." (Compl. ¶ 68; *see also id.* ¶ 36 (noting that Christina "denied that she owed [Plaintiff] any money" in the 1998 Action).)

While Plaintiff asserts in his opposition to the motion to dismiss that he has "alleg[ed] that the funds transferred to [the] JDG [Entities] was [sic] the only asset to pay [Christina's] debt to [Plaintiff]," (Opp'n at 13 (citing Compl. ¶¶ 42, 56–57, 59)), three of the four cited paragraphs of the complaint allege that the funds at issue were Christina's "only substantial asset *known to* [Plaintiff]." (Compl. ¶¶ 42, 57, 59 (emphasis added).) The other cited paragraph alleges that Christina "admitted . . . to intentionally hiding assets from [Plaintiff]." (*Id.* ¶ 56.) As previously explained, these allegations actually suggest that the funds at issue were *not* Christina's only asset.

Plaintiff also claims in his opposition to the motion to dismiss that that GMLLC and the JDG Entities used the same attorneys. (Opp'n at 11–12.) However, Plaintiff does not cite any paragraph of the complaint containing such an allegation. Plaintiff does cite Christina's deposition testimony, but it does not support his claim. (*See id.* at 11 (citing Ray Dep. Tr. at 47:21–23).) While Christina names an attorney in the cited testimony, immediately before providing that attorney's name, Christina testifies that she is "not sure" if the attorney who "created the Guarnerius documents . . . advised [her] on the Guarnerius management agreement" that she had with the JDG Entities. (Ray Dep. Tr. at 47:15–28.) Thus, Plaintiff cannot rely upon a claim that Christina and the JDG Entities used the same attorneys to support an inference of fraudulent intent.

Plaintiff further contends that he has shown a "course of conduct" sufficient to give rise to an inference of fraud because "since 1994 Plaintiff has been denied payment on the debt" alleged in the 1998 Action. (Opp'n at 13 (citing Compl. ¶ 33).[19]) Plaintiff also asserts that "each time [Plaintiff] inquired, [Christina] avoided his questions regarding payment." (*Id.*) But Plaintiff does not allege that he expressly asked for payment. In *Rosa*, upon which Plaintiff relies, the complaint

---

[19] Plaintiff's reference to paragraph 33 of the complaint appears to be in error, as that paragraph refers to payments that Christina made. (*See* Compl. ¶ 33.) Plaintiff likely intends to refer to paragraph 34, which alleges, "In 1994, [Christina] ceased making payments to [Plaintiff]." (*Id.* ¶ 34.)

"allege[d] several times that [plaintiff] asked for . . . full payment" but was not paid in accordance with the parties' agreed upon payment schedule. 2017 WL 980338, at \*5. The defendant "evaded questions" as to when payments would be made but "continu[ed] to represent that [plaintiff] would receive his payments." *Id.* Plaintiff has not alleged such representations were made here. The remaining conduct that Plaintiff alleges—that Christina admitted to hiding assets from Plaintiff in 2010 and did not inform him of the transfers to the JDG Entities until 2011—does not evince fraudulent intent, as Christina had no obligation to disclose information to Plaintiff regarding her assets at the time. (Opp'n at 13–14 (citing Compl. ¶ 56).)

Plaintiff argues that "statements made in phone calls with [Christina], as well as in her affidavits, support a finding of actual fraud." (Opp'n at 14.) In the complaint, Plaintiff alleges that the statements reflect "numerous occasions" on which Christina "told Plaintiff and/or the New York Supreme Court that she would never pay him the monies she owed him and would do whatever it takes to avoid doing so." (Compl. ¶ 68.) But statements of desire to avoid payment of a debt do not, without more, suggest that Christina intended to commit fraud. In fact, her willingness to make such statements both directly to Plaintiff and in publicly filed court documents suggests that she *lacked* fraudulent intent.

Moreover, the statements that Plaintiff identifies were considered by the New York Supreme Court in the 2010 and 2014 Actions. (*See* 2010 Compl. ¶ 21 & Ex. 7 (Nov. 4, 2009 Email); 2014 Compl. ¶¶ 48–49 (Sept. 1, 2006 and Mar. 17, 2010 phone calls); *id.*, Ex. 1 (February 2011 Affidavit); *id.* ¶ 50 & Ex. 3 (March 2011 Affidavit).) In both actions, the First Department found Plaintiff failed to allege actual intent to defraud. *See Ray I*, 970 N.Y.S.2d at 12; *Ray II*, 68 N.Y.S.3d at 725. Plaintiff has not provided this Court with a basis to reach a different conclusion.[20]

---

[20] Absent a viable DCL § 276 claim, Plaintiff's claim for attorneys' fees pursuant to DCL § 276-a necessarily fails as well. *See, e.g., Harris v. Coleman*, 863 F. Supp. 2d 336, 344 (S.D.N.Y. 2012) (noting

## V.   CONCLUSION

Defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim, (ECF No. 16), is

GRANTED.  Plaintiff's cross-motion for leave to re-serve, (ECF No. 27), is DENIED as moot.

Dated: New York, New York
March 28, 2019

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

---

that when plaintiffs "have not adequately stated a claim for relief under section 276, their section 276-a
claim cannot proceed").